JUSTICE LEAPHART,
specially concurring.
I specially concur as to Issue Number 4 — Did the District Court err when it admitted testimony from the victim’s treating physician who repeated out-of-court statements made to him by the victim?
Rule 803(4), M.R.Evid., provides an exception to the rule excluding hearsay. The exception includes statements made by a patient to his/her physician as to symptoms, pain or the “general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.” In the instant case, Dr. Salisbury, Thymer’s treating physician, testified that, in responding to the doctor’s inquiries as to the nature and cause of his injuries, Thymer said that Huerta was the one who had picked him up by the hair, had choked and hit him and slapped him in the face. I agree that the hearsay statements were admissible to the extent that Thymer described his injuries and how they were inflicted upon him. This information is pertinent to the diagnosis and treatment. I disagree that Thymer’s statements identifying Huerta as the perpetrator were pertinent to the diagnosis or treatment. Huerta’s defense to the charge was that Thymer’s mother Brenda, not Huerta, was responsible for the injuries. The question before the jury was who had inflicted these injuries on Thymer, Huerta or Brenda? Since the doctor’s hearsay testimony that Thymer identified Huerta as the perpetrator went to the heart of Huerta’s defense and since the identity of the perpetrator was not essential to medical diagnosis or treatment, that aspect of the testimony should have been excluded.
However, although the doctor’s hearsay testimony identifying Huerta was beyond the scope of Rule 803(4), M.R.Evid., and was thus error, I would hold that it was harmless error given that Thymer testified at trial and specifically identified Huerta as the assailant who pulled his hair, spit on him, body slammed him onto the couch, kicked him, threw him against the kitchen wall and said “not to tell *263 [his] mom” or “[Huerta] would kill [his] family.” Since Thymer’s hearsay statements to Dr. Salisbury were consistent with Thymer’s trial testimony and since the trial testimony was subject to cross-examination, any error in admitting the hearsay was harmless.